and special welcome to the students that are here. I hope this is a helpful to your civic education and there's something you will learn from today's process. We have four cases to hear today. We will start out the first case of Langford versus Joyner. We'll hear from the appellate. Thank you and may it please the court. Judge Wynn, Judge Thacker, Judge Richardson, good morning. My name is Judge Wynn. This case comes to the court upon an appeal from the dismissal of Mr. Langford's complaint by Judge Kane of the District Court for South Carolina based upon or under the motion of the government under Rule 12b-6 asserting that the complaint did not set out a claim for an Eighth Amendment violation asserting that the five named defendants in the case had failed to provide. Okay, so what is your best argument that it did sufficiently set out a claim for an Eighth Amendment violation? The best argument, Judge Thacker, is this. I think that the principle, I guess criticism by Judge Kane of the as well as the argument of the government and by government I mean the the five named defendants was that I did not individualize the five defendants activities. And you agree you did not? Oh, I agree I did not, Your Honor. I think it's more than their activities, it's their knowledge. Well, here's my response to that, Judge. I understand that that's the principal problem. In this circumstance, Judge, all five defendants did the same thing, which was nothing. And while I suppose I could have set out exactly that statement. I'm sorry, but it's not just what they did, it's also their knowledge, right? I mean that's an argument that suggests that the warden and the case manager and the nurse all have the same knowledge. Well, Your Honor, I think that I can and I think that I did. And the reason why I did it that way is... Where would you, where do you even suggest that those people with wildly different jobs would have had the same knowledge? Well, here's the the assertion, Your Honor, is that during this course of time from March 20 until March 28, all of these five defendants saw my client in increasingly serious medical distress. And how do we know that the warden saw your client? Well, that's the assertion in the case, Your Honor, that they all know and I would... Where in the complaint? What's the paragraph? I would invite the Okay, so page 3 of the complaint, JA 7. In fact, a better paragraph would be page 9 of the Joint Appendix, paragraph 16, where I say, and I quote, with knowledge of Langford's dire medical condition... That's just a conclusion, right? That is a conclusion. That's not a factual allegation that the warden, the nurse, the case manager, that each of them had any particular piece of knowledge whatsoever. Well, let me back up just for a minute, Judge Richardson, and talk about the assertion. Before you back up and move to a different topic, do we agree that there's no allegations that these individuals all had the same knowledge or what knowledge any one of them had? Well, again, Your Honor, I think there is a disagreement that each had the same knowledge of the worst... All right, well, point me to where is... Let me rephrase it then. Is there any paragraph other than 16 in which you believe that you have properly made that allegation? Let me invite the court's attention then to page... This is Joint Appendix, page 7, paragraph 8. And that starts with, from the time of his return from SDI Estill, to SDI Estill, rather, on March 20, 2018, until his admission back at HRMC on the 28th, Langford continually brought to the attention of the defendants and other members of SDI Estill's staff, whose identities are unknown... Which ones? That's the that's the challenge, right? Is that like, that's why I say I can't tell whether that's the nurse, the case manager, the warden? I mean, I don't know whether he's talking to the warden on a regular basis or... Well, again, Your Honor, and I could have done it more specifically, I understand that, but again, we're at the defendant was personally responsible? What constitution violation? In looking back at Iqbal and looking back at Twombly... I don't want you to look back, I want you to think about Bivins in terms of what Bivins requires, the specificity here. Do you meet that standard here? Especially with the non-medical defendants. Well, I understand the non-medical defendants have a slightly different assertion that I have to make against them as opposed to the medical defendants. You can't group them. You have to be specific. I did not group them. I mean, I'll be perfectly candid with that. You can't just give them some common sort of recognition. It has to be specific. Is that not true? Well, Your Honor, I think I was as specific as I needed to be at this stage of the game, which is the pleading stage, and that is because each one of these Not each one. You say defendants, plural. You don't do any of them individually. Can I take a different tact? Do you have any legal authority supporting your position that the way you have generically grouped the defendants in the complaint is sufficient? I don't, quite frankly, Judge Thacker. I'm sorry. I appreciate your candor. Well, I mean, that's the way I've ended up, but there's nothing that says I can't do that in my view in any event, particularly in a circumstance where all of these defendants did exactly the same thing, which again was nothing. I mean, it was obvious from the pleadings that are set out in the complaint that my client was in a worsening condition, medical condition, starting with his first introduction to HRMC on March 20th, where he was taken to HRMC complaining of abdominal pain, nausea, and vomiting. They sent him back from an emergency room visit at that private hospital. The emergency room cleared him. They said there's nothing remarkable here. He's clear. Yes, he's complaining about stomach pain, but he goes back. They send him back. That's correct. Aren't they, I mean, even if we got past the specificity problem, I mean, you know, you got a case manager who happens to see him. Isn't he allowed to rely on that? He just sent him to a doctor. The doctor said, no, he's fine. And, you know, the individual shows right back up, continuing to complain, understandably, right? This is not a critique of your client. But if you're the case manager, surely the fact that the emergency room, the hospital just cleared him is something that undermines subjective knowledge of a substantial risk of serious harm, no? I take a little different tack on that. I understand that cuts both ways, but it also cuts in favor of my client at the pleading stage, because it puts Estill and all of the defendants who are aware of that emergency room visit on notice that something was up. No, no, no, because the doctor, the expert said, no, nothing's up, right? The doctor said it's unremarkable. Send him back. He'd say it was unremarkable. He didn't clear him. He didn't say he's fine and dandy. He said it was unremarkable. I mean, send him back to Estill, and upon being sent back to Estill, then we have a series of events over an eight-day period in which his condition is worsening to the extent that he can no longer even walk. He can only walk with assistance. He is actually, at the 28th of March, carried into Estill medical offices and left there, and that was one of his many visits to that office during that period of time, in which he was complaining of the same things and a worsening of his condition, and again, the defendants did nothing during that period of time. So I understand you want to put weight on this idea that it was worsening. Do you agree that if he had complained about the same things, not worsening or different, but the same things, that the guards would be entitled to rely on the emergency rooms discharge and finding of unremarkability? I'm not sure that's a question you're asking me. If that was the only fact, that would be the case, but that's not the only fact. I mean, we had the start of nausea, abdominal pain, vomiting, that became nausea, abdominal pain, vomiting, uncontrollable diarrhea, where he spent most of those eight-day periods. So the increase is from vomiting to diarrhea? Like, that's the move? What's the complaint that it was worsening? Just that he didn't have diarrhea before and he got diarrhea after? Yeah, that he complained about excruciating pain, not just abdominal pain, but excruciating pain. During that eight-day period, he lost the ability... Do you suggest that he had only a little bit of pain before? I mean, they took him to the emergency room before. Seems like to me he was complaining about a fair bit of pain then, too. Well, he was complaining about pain, but it became excruciating pain, and that's alleged in the complaint. He could no longer walk. He had to be assisted by way of a wheelchair or actually carried into the medical facility at the end of that eight-day period, and he spent most of his time, as I allege in the complaint, when he was not in medical, he was in the showers because of that uncontrollable diarrhea. It wasn't just diarrhea, it was uncontrollable diarrhea. Right, you do facts sound horrible, but you don't allege that any of the particular defendants knew or saw him in the shower with this uncontrollable diarrhea or observed him in the clinic or any of that. That's the challenge. That is the challenge, Your Honor, but I would say that's a reasonable inference that can be made from all of those allegations, and again, I'd lump them together and I could be justifiably criticized for doing that, but at the same time, though, I had a situation where I had these five acting defendants and others unknown that did, and I don't mean to beat a dead horse here, did exactly the same thing, which was nothing in response to my client's increasing pain, increasing symptom and symptomatics that he was expressing and that were clearly observable, as I allege in the complaint, and taking all those . . . The problem you have there is you're dealing with the non-medical defendants, at least. They're permitted to rely upon what the medical authorities are telling them, and so I think there's a serious differentiation between your argument as it might apply to non-medical defendants as opposed to the two medical defendants you do name, but you don't specify as to what they're doing. There may be something you, in terms of the direction you're going, if you focus on the medical defendants, Chamber and Lee, the two nurses, in terms of what they did, but then you discuss those two cases that you brought up earlier, the seminal cases of Iqbal and Quamley, in terms of why would it be sufficient in terms of the factual pleading that you make for both of them, if you could put them together there, then there's some possibility maybe that survives and goes in the direction of it, at least from my view, but I'd like to hear your views on that. Well, Your Honor, in terms of the non-medical actors, and there are three . . . I was trying to move you away from the non-medical actors, but if you want to stay there, you stay there. I don't know if you've been listening to the questions on this bench, and I understand your position on it, but I move you to the medical defendants, but if you want to stay with the non-medical defendants, you are certainly privileged to do so. Well, I was just going to make one comment on the non-medical, and the non-medical I have to establish, have to establish, that there was a conscious neglect on their part, and knowledge of the doctors or physicians, I suppose . . . Your problem still relies on the point of not being specific as to who did what. That's your problem. Bivens required. We didn't say you have to do it. It's Bivens that says you have to do it. Well, I understand that, Judge Thacker, but again, I wouldn't . . . We know which days the nurses saw your client. I mean, were they there? Was the nurse there the last day? I mean, when he's carried in, they then take him back to the hospital, right? That's the last day. When he's carried in on the last day, they send him back, and he goes back to the hospital, and he gets care. Was the nurse working that day? Was that the day that they didn't act fast? I mean, it seemed like to me they acted pretty fast the last day. Which day do you think that . . . And on day one, as soon as . . . like, immediately returning from the hospital, were they required to send him back to the hospital? Well, Your Honor, again, unfortunately, my client, during this eight-day period, it's all kind of a fuzzy vent for him because he was in this medical extremis, which became increasingly bad as he worked his way up to the 28th. So, I can't say specifically, and there's nothing in the record that I can find, that he visited on any particular day. But, the assertion is he visited during that period of time, from the 20th to the 28th. He visited. He said he expressed the signs, or the symptoms, rather, of increasing nausea, increasing vomiting, uncontrollable diarrhea. He had to be assisted into the medical facility by other inmates because he could not make it there himself. And during that period of time, those two nurses saw him . . . were spoken to by him. He made those same complaints and saw that the fact that he was being brought in, unable to walk by himself or unassisted, by other inmates. So, you know, again, as to the medical . . . back to Judge Thacker's questioning on the medical aspect or the medical defendants, I would suggest to the court that that is sufficient at this stage of the litigation to assert a Bivens claim, at least against the two medical actors. Now, in regard to the non-medical defendants, I would suggest pretty much the same thing. I know I have an extra level of pleading, I guess, or proof to establish a Bivens violation as against those non-medical employees. But again, you have a situation where, and again, it's nonspecific, but the fact of the matter is, I mean, my client presented in a way to the medical defendants the need, a serious medical need that they did not comply with, that they did not treat, that they ignored, in essence. And that the . . . I would suggest to the court that the pleadings can be inferred from those pleadings that the non-medical actors knew that. Because they had seen him being carried into the medical facility and had been spoken to by my client that he was in this excruciating pain. And for those reasons, Your Honors, I would suggest to the court that as to . . . certainly as to the medical actors or medical defendants, that the pleading is sufficient. I know there's an extra level for the non-medical defendants, and I would suggest that even in that situation, that I have met that pleading at this stage of the litigation. Thank you, Mr. Lane. If there are no other questions, I have three minutes in rebuttal. Thank you very much. We do have rebuttal time left. Thank you, Mr. Lane. We'll hear from the police attorney, Mrs. Broughton. Did I pronounce that correctly? Stoughton, Your Honor. Stoughton. Absolutely. May I please support Katie Stoughton on behalf of the defendants? Mr. Lankford's complaint did not state a claim for deliberate indifference as to any of the defendants, and the district court's order dismissing it should be affirmed. Rule 8 required Mr. Lankford to plausibly allege that each individual defendant actually subjectively recognized an excessive risk and subjectively recognized that his or her actions were inappropriate in light of that risk. How would you find those facts out in the 12B6 stage when you're just trying to plead? You haven't taken any additional facts. You haven't done a deposition. You haven't done any type of interrogators. How do you find out the specificity that's necessary for Bivens to file a complaint like this, or would you say you could do it upon information and belief? Well, Rule 8 is an admittedly low bar, and so it doesn't take much to get you to a Bivens claim, but Bivens itself, deliberate indifference itself, is a high standard. And so to the questions you were asking earlier, there's got to be something to put these defendants on fair notice of what their actions were, what the alleged constitutional violations were, when those violations were committed. And here, there's none of that. All we have is the defendants, the defendants, the defendants. But I think Judge Winn's question was, how is appellant supposed to get that level of specificity at this stage when we haven't had discovery? Well, he was present when all of this happened, and so if he went to see the nurses in the medical offices, he could allege, it doesn't have to be as specific as the date or the time, but it has to be, I saw Nurse Lee in the medical office presented these symptoms, and this is what happened. And so in terms of specificity, date, time, location aren't necessarily required, but again, there has to be enough to put the defendant on notice. I, as the plaintiff, went, this is how I interacted with you, this is how you responded, and that's what I think was a constitutional violation. But even with the nurses, and particularly medical defendants on it, in terms of whether this was something that perhaps was obvious in terms of what was going on, we've held that, even in the instance of actual knowledge exists, when it is so obvious that the defendants could not have failed to know about it. We did that in the Modessi case, you certainly are familiar with that. Why doesn't it exist here? At least ask those nurses, I mean, he says he was continually in the medical office, and that his injury was so obvious. Because he never alleges that he saw the nurses in the medical office, or that the nurses saw him in the medical office, so that they would see his condition and realize how severe it was. He just says, I was in the waiting room of the medical office, and someone, known and unknown people in the medical offices refused him treatment. There's no specific allegation that those are the nurses, those are the people who saw him, and that they should have realized how severe his condition was. Is there, can it, I mean, not trying to make sort of a bright line rule, but it seems odd to describe stomach pain as being so obvious that it requires medical care. When he went to the hospital for the same stomach pain, and the hospital, you know, who are more experts than the nurses, say he's clear, and maybe he develops diarrhea that he didn't have before, although exactly why it's worsening is certainly not different in kind, might be different in degree. How would that be so obvious that a nurse, or certainly a guard, would be on notice that he needs to be taken back to the hospital? Well, he alleges that it's worsening in degree, and we have to take that as true in the complaint. So, you know, if he, it's very fact specific, but if he comes back from the hospital and he can walk and he's interacting with people and he's fine, and then a few days later he's immobile in the showers with uncontrollable diarrhea and he can't walk and he needs inmate assistance and he's in a wheelchair, you know, at some point it should become obvious, at least to the medical professionals, that his condition has worsened since he came back from the hospital. Well, you hit the nail on the head when you said, we're stuck with what he says in this complaint. We have to take that as true. He says that's what it was. What's important here, you say he's out in this waiting room, but he alleges that it was the defendants that he saw, and he only names two nurses. Why is that not enough to state a plausible claim, at least insofar as the nurses, because there's only two nurses that he saw? And he says, I saw the defendants, and he only names two nurses as the defendants. Well, he says he saw the defendants, which is all five named defendants and four unnamed defendants. But, again, never. He wouldn't see the non-medical defendants for medical care, would he? Well, that's what the allegation in the complaint is. We have to employ a little common sense here. No one's going to say he saw the ward because he had a stomach problem and needed some help. I'm just trying to, as you said, set this bar. Then you have deliberate indifference that raises a bet. I don't want to push this to somewhere where, well, we're going to be so picky about this. He said defendants. He didn't say medical people. But let's say the two defendants are referenced as defendants here, and he said he saw them, and those two defendants are Chamberlain and Lee, I think, the nurses. Why would that not be sufficient, insofar as the medical ones, to allege a plausible claim? Because he never specifically alleges that he saw those defendants or that they saw him in the medical offices or would have or should have been able to see that his condition was worsening. But he argues this morning that all five of the- Help me understand, because when I read paragraph nine, I take Judge Wynn's point, but I don't read paragraph nine of his complaint to allege that he saw any defendants in the medical waiting room. He says he remained in the medical offices waiting area for as long as he was allowed, and he was refused treatment or even an examination. But none of that refers to any given defendant, but even to the defendants as a whole, right? That's correct, Your Honor. But, I mean, the problem is all he's arguing is that he continually brought this to the attention of the defendants collectively as a whole, but absent any allegation that all five of these defendants were in the same place at the same time and somehow acting in concert, it's not sufficient to put any one of them on notice of the alleged constitutional violations just to lump them all as a whole as the defendants, the defendants, the defendants in the complaint. I would point the Court to the Sixth Circuit's decision in Marcellus, which is cited in our brief on page 10, which is almost directly on point here. It's a First and Fourth Amendment claim instead of an Eighth Amendment claim against federal agents, but a very detailed, long complaint in which they just repeatedly say the defendants, the defendants, the defendants. And the Sixth Circuit says that makes it impossible for those defendants to ascertain what particular unconstitutional acts any of the defendants are alleged to have committed, and that's the problem that we have in this case. It wasn't specified, and so the presumption is it was dismissed with prejudice.  Yes, Your Honor. Overall, Mr. Lankford has made only generalized and categorical allegations referring to all of the defendants collectively, and it's just not enough. These generalized, conclusory, and collective allegations fail to state a claim that each or any defendant directly or personally violated Mr. Lankford's Eighth Amendment rights. It's hard to divorce what is the experience of going to a waiting room even as a civilian. He's a prisoner, I guess, in a situation in which you go into a medical waiting room, and you could be in there for hours and hours and hours. You don't know who's waiting on you or who's causing the problem there. And yet, we are in a situation here where we do know that the two medical people in there, at least within there, were the nurses. And he says that the defendants, and I understand he has these non-medical defendants, but I'm having a hard time wrapping my mind around that we can even think that he's sitting there waiting in that waiting room to see the other people in there who are not medical people. You know, I'm still kind of there with that, trying to understand how far do we push this when the evidence seems he's trying to plead something here. Granted, he's represented by counsel in drafting this complaint, I take it. Yes, Your Honor. That's the thing that really kind of drives this event. This is not a pro se. The prisoner sends his little complaint on a paper bag or in some other form there. This is a legal person who should know these things, and I'm not putting that on the defense counsel, the plaintiff's counsel, because as I said, you know, maybe you don't know. And this case law kind of puts you in a conundrum when you don't know and you really got to do some speculative information or say something you really don't know, which is, you know, this particular nurse did this. You run at risk as a lawyer. You put that in there and you don't know it. Oh, you could be sanctioned for putting something like that. It's kind of a catch-22, isn't it? Your Honor, I understand the difficulty, especially of an inmate who's experiencing a serious health issue and need. But again, he was represented by counsel. He had the assistance of counsel from the time the complaint was filed. And at the end of the day, it's the Supreme Court that requires these complaints to include factual content to support these allegations and to show that each defendant has personal liability based on their own individual constitutional violations. And here the complaint just doesn't meet that bar under Rule 8. Someone can answer this. No, no, please. Can a BOP prisoner request their own records? I believe so, Your Honor, yes. We could imagine ways in which, by request or FOIA or otherwise, he could figure it out. I'm with Judge Wynn. It's a little bit of a catch-22. But I'm also with you that the Supreme Court tells us that's what they have to do. But it's not as if there are no ways to figure out who were the nurses that were even working that day. I mean, presumably every nurse doesn't work every single day or there are different people that are in charge of the waiting room. But it's not as if there's no way for him to develop that information. There are other inmates who may have been in the waiting room with him who could provide that information. There are ways to develop that. And that might not be an easy bar to meet, but that's something that's doable for an inmate, right? That's correct. And, again, it's a low bar. We're not suggesting that he had to say, you know, I was in the medical offices on March 23 at 8, 17 a.m., and these are the four people I saw who did this. But you at least had to give enough to put these nurses on notice. This is the time he alleges he saw you. This is what he alleges he said, and this is how he alleges you responded. And that, he claims, amounts to a constitutional violation. And those are the details that are missing from this complaint. All you have in the complaint are paragraphs 8, 14, and 16 that he claims he brought his condition to the attention of the defendants, and then in paragraph 14 that they refused to treat him. These are just exactly the type of naked assertions devoid of further factual development that the Supreme Court rejected in Iqbal. And Iqbal, of course, was also a Bivens action. So, as I look at it, though, of the defendants, the only two medical people in our chamber who leave, he says he's continually out there in that waiting room, and repeatedly his condition is worsening. It was obvious from his physical appearance. Is there any, is the allegation sufficient to say that those were the two medical people from his allegations that were at least in a position to do something or to treat him that day? I don't think the court should infer that from the complaint. And based on the argument this morning, the argument is that all five of these defendants were together doing nothing. They were all doing the same thing. All five, but my question is, with regard to the medical ones, is there anything to indicate they actually were there in his complaint, or that, because this refers to his actual medical treatment, not bringing him there, not neglecting him, not doing nothing. This is him sitting out there, you know, in this condition that he's in, that turned out to be not a good situation for him at all. Is there any question as to, was the allegation sufficient to make it clear that both Chamber and Lee are the medical people for which he's referring to? It's not, because he doesn't include that allegation in the complaint. So if you look at paragraph nine, for example, he remained in the FCI Estill Medical Office's waiting area for as long as he was allowed to do so, and he was refused treatment or even an examination of his physical condition. That paragraph doesn't even say the word the defendants. And so there's no allegation in that paragraph about who those people were, who the defendants were, let alone that it was these two specific nurses that he's named in his complaint. Let's go back to the inference part, 12B6. 12B6, we are allowed to draw all reasonable inferences in favor of the non-moving party, which is Landford here. Is that not a reasonable inference, that these are the medical people who he's referring to? I don't think it's a reasonable inference to say that he means for that one paragraph, as opposed to every other paragraph in the complaint, to only apply to the two medical defendants and not to all five defendants who he, throughout the rest of the complaint, has lodged all of these allegations against. There's nothing in the complaint that shows he's differentiating between the medical and the non-medical defendants. Do we know how many people work in the medical offices? I don't, Your Honor. I mean, if the answer was only two, right, that might be a useful piece of information for inferring that these were the two. But if the answer were some number other than two, which we might imagine, then it wouldn't give us any inference that he's picked out the right two or that these two were even there that day. That's a fair point. Unfortunately, I don't know how many nurses there are in the medical offices. But the point is, when we're making inferences, we can't assume that these are the only two medical officials that work at ASTOL, because that's not alleged. And so we can't draw an inference suggesting that. That's fair, Your Honor. You know, what's interesting is that we're not really discussing whether he has a plausible claim or something actually happened or someone's responsible for it. What we are doing is we're taking a legal hurdle created by the courts to deny an individual an opportunity to access the court, when you think about it. What you are saying, essentially, if we allow this thing simply to go to the next stage, summary judgment stage, at summary judgment stage, he would be allowed to take depositions, he'd be allowed to gather evidence, and perhaps it is quite likely he could make out a plausible claim. But we have created this conundrum, we being the Supreme Court, as Judge Richardson said, we have to follow the Supreme Court. Whether or not we like it or not, we have to go there. But it is somewhat of an anomaly in this situation that what we are discussing in this time period is not whether this individual has been wrong, not whether he's entitled to some relief, not whether something was done wrong to him. We are spending our time looking at how did he word the complaint, and what did he say, and did he use this name, and did he use that name? When if we look at it in light of Rule 8, take deliberate indifference out of it, because that's where it's getting a problem there, the knowledge thing, when we look at it there, no reasonable person wouldn't say you wouldn't at least hear a little bit more. I mean, why not? Move beyond the 12b-6. Allow for an opportunity to ask some questions. Who was it in this room? And were you there that day? Did you know he was there? Those kinds of things. And then proceed to a claim. It just seems... I realize we're constrained by the law, so I'm not asking you to talk against the law. I'm simply pointing out that this is a problem in our legal system. When we face ourselves, we courts create these hurdles for citizens that come to court, and then we vigorously defend them and say we're tired of our hands, we can't do it, because you didn't name that defendant specifically. You just said you were outside the room waiting and waiting and waiting with the obvious physical condition that led to tragic results for this man. I mean, horrible. Don't you think that's a problem? I'm not saying we can fix it today, but that does seem to be a problem. Can you comment on that same idea? Maybe the problem was creating a Bivens remedy to begin with? If I could take it in two different parts. To Judge Wooden's point first, Congress did create a remedy for prisoners in exactly this situation, and it's a medical malpractice claim under the FTCA. It's not a Bivens action against these individual government officials in their own individual capacities. And so I don't know why this was fled as an Eighth Amendment Bivens claim instead of as an FTCA case, but this is a medical malpractice claim. It's alleging negligence on the part of the BOP as a whole in not providing him adequate treatment. And so I don't mean to suggest that the courthouse doors are closed to him altogether. It's just this was not the appropriate avenue based on the allegations in the complaint. As to Bivens as a whole, I'm sure the court is well aware... That was a rhetorical question. ...of Egbert and the cases that have followed therefrom. We've not taken a position in this case on whether this is appropriately enacted. I would love for you to engage in the Bivens question. I mean, part of it comes from we as young judges coming along questioning the wisdom of those judges who decades ago came up with things. All of a sudden, the world turns, and now that shouldn't be so. But we don't need to go there today. Judge Richardson is picking on your bit, and I'm going with him a little bit, too. I think my superiors at the department would appreciate me refraining from comment on Bivens. But if the court has no further questions, we would just ask that the court affirm the district court's decision dismissing Mr. Lankford's complaint. We're fine. Thank you. Thank you for your argument. Mr. Lank, you have just a few minutes. Thank you, Your Honor. To Judge Richardson's point, I didn't just pick out those names out of a hat and name the medical defendants as someone who might have been there at the time. It tells us that Chamber and Lee were the two in that medical facility. And preferably something in the complaint, right? Not based on your representation. I've known you for a long time. I trust you to the ends of the earth, right? But unfortunately, you telling me this is what you knew is not a useful piece of information, right? We've got to look at the complaint, not your representation of the diligence you did before you filed. Because I'm sure you did diligence. But I've got to be able to see it from the complaint, right? I understand that, Your Honor. But Your Honor went beyond the complaint and talked about records and things of that nature. And the only two names I could come up with were those two nurses. And again, going back to what I said in my opening argument, was that each of these individual defendants, and particularly the medical defendants, did the same thing, which was nothing. They heard the complaints, and that's alleged in the complaint itself. They heard the complaints and the symptoms of my client. They saw his condition. They saw it repeatedly over a period of time. Now, I can't specify each particular day or time in which they saw them, because, well, I just can't at this point. But I do know, and I have alleged, that in this eight-day period, which is not a great... How would you plead it today if you were writing that complaint? Would you do something different? Oh, absolutely, Your Honor. How would you do it? Well, I would put each individual named. I would say they did this, and they did that, and they did this. But I would end up, though, I would think, kind of the same place. But you couldn't do it just with a conclusory statement, right? You agree it wouldn't be sufficient to say, and the warden had knowledge, and the nurse had knowledge, and the case manager had knowledge. You can't do the conclusion. You'd have to have facts. And I get Judge Wynn's point's a good one, right? Iqbal creates a pretty tough road for you in a Bivens action. I agree. I mean, Bivens are different pleading rules, it seems like. Maybe not different rules, but different layers of rules, or layers of pleadings that you have to kind of jump through, or hurdles that have been set up by the courts over the years. But as the magistrate judge said in her report and recommendation, Iqbal doesn't say that I have to plead a specific time and a specific date for the alleged violations. I've got to get involved. You have to plead with respect to a specific individual's, like, knowledge and action. I don't disagree with that at all, Judge Richardson. And I see my time is about up. But I would suggest to the court, again, at least as to the medical defendants, the pleading is sufficient to survive a 12B6 motion. And I ask the court to reverse Judge King. Thank you, Your Honor. Thank you both for your wonderful arguments today. You know that the normal tradition of this court is somewhat unique. I'll tell the students that. Typically, this court, the three of us would come down, we would shake the hands of counsel and return to the bench. Not many, not any court, or very few courts in the nation does that, but we've been doing that for decades. We've stopped doing it during the COVID season, and for good reason, for our health and for yours. But we look forward to the opportunity to do it in the future. So accept our virtual handshakes and with our pleasure.
judges: James Andrew Wynn, Stephanie D. Thacker, Julius N. Richardson